**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-2432

CELIA R. TAVAREZ,

Plaintiff, Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, U.S. District Judge]

Before

Torruella, Lipez and Howard,
Circuit Judges.

Melba N. Rivera Camacho on brief for appellant.
    H.S. Garcia, United States Attorney, Katherine Gonzalez-Valentin, Assistant U.S. Attorney, and Dino Trubiano, Assistant Regional Counsel, on brief for appellee.

June 30, 2005

**Per Curiam**. Claimant Celia R. Tavarez filed an application for Social Security disability benefits primarily based on (1) back pain, (2) carpal tunnel syndrome, and (3) a mental impairment (depression). The administrative law judge (ALJ) determined that although claimant cannot perform her past work due to the skill level involved in this work, she nonetheless retains the residual functional capacity (RFC) to perform the exertional demands of medium work (1) which is simple and unskilled and (2) which does not require frequent bilateral handling, fingering, and manipulating. Relying on the Medical Vocational Guidelines (the Grid), 20 C.F.R. Part 404, Subpart P, App. 2, as a framework, the ALJ then concluded that claimant was not disabled. The district court upheld the denial of disability benefits.

We agree with the district court concerning claimant's mental impairment. Claimant did not seek any treatment for this condition until three weeks before the date her insured status expired (December 31, 2001), and Dr. Perez, claimant's treating psychiatrist, did not place any limitations on claimant prior to this date. Indeed, it was not until April 24, 2002, that Dr. Perez opined that claimant's capacity for work was poor, and it was not until March 2003 that Dr. Perez rated claimant as being markedly limited in all areas of mental functioning. In neither

of these opinions did Dr. Perez state that these limitations had existed prior to December 31, 2001.

As a result, and given the lack of any evidence in the record concerning the effects of claimant's mental impairment on her ability to function in the workplace during the relevant time, the ALJ's conclusion that this impairment is mild was supported by substantial evidence. Similarly, the ALJ's determination that claimant's mental condition only affected her to the extent that she was limited to coping with simple instructions is supported by substantial evidence. In relation to this latter determination, the RFC assessment of the non-examining clinical psychologist rated claimant as having no significant limitations in dealing with such instructions. This assessment further stated that claimant could sustain pace and attention during a regular work-day or work-week and could persist in work activities in a sustained manner.

However, we do agree with claimant that the ALJ's reliance on the Grid was in error. Where a claimant cannot return to her past work, as here, the Commissioner bears the burden of proving the existence of other jobs in the national economy which the claimant is capable of performing. See Ortiz v. Secretary of Health and Human Services, 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). The Grid permits the Commissioner to satisfy this burden without having to resort to the testimony of

a vocational expert (VE).  Id.  Thus, "should a nonexertional limitation be found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate."  Id.  However, where a claimant has a nonexertional impairment which "significantly affects" the claimant's capacity to perform the full range of work he or she is otherwise exertionally capable of performing, the Commissioner must carry her burden of showing the availability of jobs in the national economy by other means.  Id. (internal quotation marks and citation omitted).  Usually, this involves obtaining the testimony of a VE.  Id. at 524.

Here, the ALJ found that claimant could perform all of the exertional requirements of medium work, and such a finding also means that claimant is capable of performing the exertional demands of sedentary and light work.  See 20 C.F.R. § 404.1567(c).  As for claimant's carpal tunnel syndrome -- a nonexertional impairment -- the ALJ concluded, as noted, that claimant could not engage in frequent bilateral fingering, handling, and manipulating.  An uncontradicted RFC assessment similarly found that claimant has limits in her ability to finger (fine manipulation) and handle (gross manipulation).

"Fingering involves picking, pinching, or otherwise working primarily with the fingers," and the ability to finger "is needed to perform most unskilled sedentary jobs."  Social

Security Ruling (SSR) 85-15, Capability to Do Other Work -- The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, at *7 (internal quotation marks omitted). See also SSR 83-10, Determining Capability to Do Other Work -- The Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *5 ("[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions"). "Handling" is defined as "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands," and handling is "required in almost all jobs." SSR 85-15, 1985 WL 56857, at *7. See also SSR 83-14, Capability to Do Other Work -- The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments, 1983 WL 31254, at *2 (grasping, holding, and turning are required "at all exertional levels"). "Significant limitations of . . . handling, therefore, may eliminate a large number of occupations a person could otherwise do." SSR 85-15, 1985 WL 56857, at *7.

The question, then, is whether an inability to frequently finger and handle "significantly affects" claimant's capacity to perform the full range of work at all of the relevant exertional levels -- sedentary, light, and medium. See Ortiz, 890 F.2d at 524. The ALJ thought not as he concluded that claimant's ability to perform at least medium work "was

substantially intact and was not compromised by any nonexertional limitations." The problem is that we cannot determine from the record the basis for the ALJ's conclusion that claimant's incapacity for frequent fingering and handling did not significantly affect the range of work in which she could engage. As SSR 85-15 points out, "[v]arying degrees of [manual] limitations . . . have different effects, and the assistance of a [VE] may be needed to determine the effects of the limitations". 1985 WL 56857, at *7. Since at least the ability to handle is required for most jobs, it seems obvious to us that the ALJ should have consulted some expert source to determine what kinds of jobs remained for a person incapable of frequently engaging in such an activity.

Further complicating the ALJ's reliance on the Grid is his failure to mention any limits on claimant's ability to stoop and crouch. According to the only RFC assessment in the record, claimant can only occasionally stoop and crouch. The consultative neurologist who examined claimant also noted that claimant's range of motion was limited in forward bending.

"[T]o perform the full range of medium work . . . , a person must be able to do both frequent stooping and frequent crouching -- bending both the back and the legs." SSR 83-14, at *5 (emphasis added). Plainly, then, an ability to engage in only occasional stooping and crouching limits the range of medium work

that claimant can perform. The addition of restrictions on claimant's capacity for stooping and crouching makes this case even more complex and provides another reason why the use of the Grid may have been problematic here. See id. at *4 ("[i]n more complex situations, the assistance of a vocational resource may be necessary").

Finally, we think that the ALJ's determination that claimant's back pain was only mild is not well-supported. As reasons for discrediting the severity of this pain, the ALJ stated that the record was devoid of any x-rays or other tests which established conditions -- such as bulging discs, herniated discs, pinched nerves, or radiculopathy -- which can cause severe pain. However, two x-rays, one taken in 1999 and the other in 2001, showed that claimant suffered from sacralization at her L5 vertebra. According to the report of the 1999 x-ray, sacralization is a common cause of low back pain. Thus, the record, in fact, contains evidence of a condition which could be expected to produce more than mild pain.

Based on the foregoing, the judgment of the district court is affirmed in part and vacated in part, and the matter is remanded to the district court with instructions to remand to the Commissioner for further proceedings consistent with this opinion.